May it please the Court, Eric Multop on behalf of Appellant Steven Caswell. Appellant was procedurally short-circuited on both of his constitutional claims relating to parole here. With respect to the first claim, that there was an ex post facto change in the rule of practice applicable to parole release decisions upon finding of suitability, this came to the District Court on a motion for summary judgment based on some pre-existing discovery ordered by or permitted by the magistrate. The District Court found that Petitioner had not made a claim sufficient to prevail on summary judgment and mentioned some other areas of evidence that would have been helpful in the District Court's eyes. All right, Counsel, I find that the procedural history as well as the specific issues that you're raising seem to be kind of complicated in this case. And the first question I have has to do with the first claim. You're arguing, as I understand it, and this is where I need help, that the 1986 decision which set the 2000 release date is still an issue. In other words, you're arguing that something went wrong in 86 with respect to identifying the 2000 release date. Am I correct? Absolutely. That's claim one. Ex post facto application. Why isn't that claim moot? Well, there's two reasons why that claim is moot. Because Your Honor is referring to the 1999 rescission. Yeah. That's potentially mooting it. Yeah, meaning the rescission decision by the 1999 Parole Board. Yes. Well, the first and most equitable answer, legal answer, is that two wrongs don't make a right. And claim two is that the 1999 decision was equally a great deal. Okay, but that's a separate claim, isn't it? Or not. It's a separate claim. But if the 1999 rescission was void and unconstitutional, then it certainly can't moot a prior error because he would still be eligible for the parole that he was entitled to in 1986. But to the extent you challenge the 1986 order. Yes. And it's now well past the year 2000. Is there anything, I mean, what's the impact of that order that would have an effect on your client? And, Your Honor, which order are you referring to with the 86? The 86 order. Okay. Our claim is that the 86 order was erroneous because it was constituted an ex post facto violation and that if the proper rule had been applied in 86, Caswell would have been out by 90. Okay. But he's been fighting that. In other words, what you're saying is he wouldn't have been subjected to continued incarceration, but for two things. One is the mistake made in 86. Right. Plus the 1999 decision. In other words, in 86, if the decision had been made correctly, he would have been out of jail in 1990. So they kind of kept him in custody. Right. And exactly. There's a double whammy here. He was he was deprived of due process in 86 by the change of rule. He started fighting that that particular due process claim as soon as he could. Proceedings went along with deliberate speed to the United States Supreme Court on a different issue. And he didn't receive an adjudication of that issue through 1999, when independently the California Board of Prisoners revoked rescinded his parole. Well, the simple answer is he continues to be in custody today because of the 1999 rescission order. Right. Exactly. Now, if in 86 his constitutional rights would have been respected, he would have been released by 1990. So you would have never been subjected to the 1999 order. Right. He could have been rescinded. That's certainly. And that's the reason the 86 decision still has consequences for him today and why he's still in prison. One of the two reasons why he's still in prison. That's one of the two reasons why he's still in prison. And if we were to stipulate that the 99 rescission decision was a welcome wake up by the board of prison terms and it was flawlessly performed and entitled to all its all its full force, full faith and credit. Then this mootness argument might have some might have some impact. We still might make the might make the claim that he would have been out. He never would have had it. But but since we also claim that the 99 rescission decision violated his due process rights, that is that cannot moot the prior constitutional violation. So in a nutshell, with respect to the errors in the in the district court's ruling regarding the validity of the 86 issue, the district court found that there was additional evidence that would have helped support or, depending on how it turned out, undermine his claim. So so Caswell was not entitled to summary judgment in his favor. Well, that might the district court's observations might have been a decent ground for denying summary judgment, but terrible ground for dismissing the petition on its on the merits, because if you don't win on summary judgment, you don't lose your whole case. You go on to trial and and fill in the fill in the additional evidence that the district court in its wisdom pointed out as as being relevant to its to his claim to the full proof of the claim on your lead to amend issue. Why wouldn't that be futile? In other words, if even if it were granted, what what would what would you show if you had the opportunity? Well, we'd show almost exactly what Mr. McQuillian showed in McQuillian v. Duncan recently decided by by this court in which he obtained relief and release based on a claim very similar to Caswell's with respect to the unlawful rescission practices. The district court found that there was a potential cause of action for the for a due process rescission violation. In the in his order on page 18 of the excerpts of record, the district court said that the record doesn't show that petitioner would be unable to state a cause of action for violate for violation of due process. But then the district court rejected our claim to our request for lead to amend solely because we hadn't explained the delay from the 1990 decision to the 2002 notice of intent to amend with respect to that claim. Now, with all respect to the district court, that's flagrantly erroneous because petitioner was exhausting his state remedies during that entire period. He won for for much of that period grant obtained a grant of habeas corpus from the Solano County Superior Court with respect to the illegality of the illegality of the decision claim and fought that up to the California Supreme Court, which he had to do under settled hate federal habeas corpus laws before he's entitled to go to federal court. So the only reason that Caswell was Caswell was denied leave to amend by the district court was that he hadn't explained his ostensible delay in bringing the claim. Well, he did explain his ostensible delay in bringing the claim as the tribunal attributed 110 percent to exhausting the state remedies. There's a recent decision called Sanders versus Ryder that the Ninth Circuit decided on September 4th. Are you familiar with it? No, Your Honor. Your Honor would like some supplemental briefing. I'd be more than happy to. It's a brief that's very consistent with your characterization of what the adequacy and specificity was of the references to due process claims that your client made in his efforts to exhaust the remedies potentially available in the state. And it may well ask opposing counsel about that decision later, but you might want to look at that case. Your Honor, I didn't recognize it from the from the names, but I am familiar. I did read it and I am familiar with it. In that vein, this relates to whether or not the California proceedings from 1999 to 2002 in which petitioner fought and won for a time but then lost his claims regarding the illegality of the rescission were exhausted with with respect to the federal constitutional basis of his fight. We have an argument that he did exhaust his federal constitutional claims by relying on state precedent that was itself federally grounded and that that type of exhaustion was acknowledged in the Sanders v. Ryder case. But more than that, in addition, I'd like to inform the court, as I informed opposing counsel this morning, that Caswell's re-exhaustion petition filed by myself, which alleged the illegality of the 1999 rescission pleadings in Broadway-style marquee letters relying on the federal constitutional basis, was denied on the merits two days ago on September 10th by the California Supreme Court. I just noticed that last night as I was looking at the Supreme Court website but haven't received the actual order yet. So that claim was not only exhausted the first time, it was not only exhausted as of 2002 based on Sanders v. Ryder, but was re-exhausted by a supplemental petition that was filed. So that is eminently right to go for adjudication on the merits. When your client was attempting to exhaust in state court, was he proceeding pro per in terms of the challenge to the 1999 rescission order? No. He had retained an attorney to do that, who was not myself, but who did an able job in obtaining relief initially in the Superior Court and then proceeding through the Court of Appeal in the California Supreme Court. Thank you, counsel. Your time has expired. We will hear from the State. Good morning, Your Honor. Deputy Attorney General Michael Williams, Respondent Warden Calderon. The docket sheet says you're a DOJ attorney. I suppose that's the State DOJ, right? Yes, it is, Your Honor. State of California. All right. Great State of California. Just to address the points that Your Honors have questioned on, the 1986 rescission and the 1999 rescission are based upon the same law and the same policy. For an ex post facto violation, there simply has not been a change in law or change in standard. Mr. Caswell is still incarcerated on an indeterminate life term. The standard the Board of Prison Terms considers is still public safety. Both in 1986 and 1999, the Board considered that factor, and in 1999 determined the original grant was improvidently granted. There's simply been no change of law on which to base an ex post facto claim. Petitioner? Yes, Your Honor. What about the issue of mootness? Is there a mootness issue here, or would that be construing it too narrowly? Your Honor, there'd be a mootness issue as to the 1986 rescission hearing because of the new 19 – excuse me, the 1986 original hearing because of the 1999 rescission hearing, which for all purposes replaced the original panel review. So this case is all about the 1999 rescission hearing? That is correct, Your Honor. Well, what about your opponent's argument that, well, except for the mistake made in 1986, he was entitled to release in 1990? So if that were correctly decided, he wouldn't have been subject to the rescission in 1999? Your Honor, the 1986 decision was – that presumes that that decision was correctly decided. That was exactly what the 1999 rescission stated did not occur. If the 1986 panel had considered the facts before it correctly and provided a result based upon the evidence before it, that 1986 result never would have occurred. Well, you're talking about Damaris. I'm just talking about as it relates to whether it's moot or not. Well, because the 1999 rescission replaced, for all purposes, the 1986 grant. I know that, but see, his argument, I wouldn't have been subjected to rescission in 1999 if I were released in 1990. Now, doesn't that make that still a live issue? I'm sorry. Whether or not you agree with him on Damaris. I was misunderstanding the thruster question, Your Honor. Yes. In terms of the 1986 panel decision, there would be a live controversy continuing to 1999 based upon that rescission. It would continue to 99. And if he's correct, let's assume that he's correct. All right. In other words, that the parole board made made a mistake in 1986. All right. Now, one of the things we could do legally is OK. We can order the parole board to remake that decision 86 correctly. And so he would be entitled to release in 1990, which would erase the 1990 rescission. Right. If I understand the question, the question is, if it had been reviewed shortly after the 1986 review today or reviewed today, reviewed today, we could say, you know, board, you know, redo your decision and release him as of 1990. Then he wouldn't be subject to the 1990 rescission. Right. If he'd be out on the streets. So in that sense, it's not moot, is it? Well, Your Honor, could find the 1999 parole rescission improper, which would result. No, no. The 86 decision. Yes, sir. That's what I'm saying is that perhaps I am misunderstanding, Your Honor. But my understanding of what you're questioning is if the 1999 rescission did not exist, if this court struck that down, you would find that the 1986 grant was the proper result and order the petitioners released forthwith. No, no. There's another way of framing the issue of mootness. Forget 1999. If we decided to address the merits first of the ex post facto claim and found that it was meritorious and found that the sentence that was imposed in 86 was improper and that the petitioners' theories as to the sentence to which he should have been subjected are correct and remanded it for purposes of reinstituting or I should say sentencing him consistent with what he claims was the pattern before the 86 sentence, then he'd be out. We wouldn't even have to address the 99 decision. That is correct, Your Honor. If you're going to find both of the 1986 and the 1999 board actions were improper based upon the constitution of the board and the results that they reached applying the law as it has stood continuously since the time of Mr. Caswell's incarceration. Yes, you'd be entitled to that. In that light, the 86 decision is not moot. Regardless of whether you may be correct that it's incorrect. I mean, the attack the petitioner makes is is incorrect. Right. I'm just talking about mootness, not about the merits. Yes. You're talking about it. Are there continuing effects from 1996? They do continue, although they were corrected by the 1999 decision. All right. But the point remains that there simply has not been the change in law that is suggested by petitioner. What this is relying on is a different change on board of prison term officials, new administrations, and applying the same law and the same standard in the way that they deem fit. And this is really focusing on policies. Yes, Your Honor. The petitioner's argument, as I understand it, is a focus on the policy implementing the unchanged law. Right. So. So your argument is, well, you know, policy and custom is not the same as law for purposes of ex post facto analysis. Right. I mean, that's your argument. But I mean. So the question is, well, where do you draw the line as to what, you know, a law for ex post facto and what's not. Isn't that what this case comes down to? It does, Your Honor. And fortunately, those decisions have already been made before the hearing today in terms of the facts before the court. In the California Department of Corrections versus Morales, the Supreme Court stated that changes in board of prison terms composition simply doesn't rise to ex post facto concerns. The state of California Supreme Court in Inouye Rose in France reached the same conclusion relying upon Morales. And the fact says statistical deviation based upon those changes does not create an ex post facto violation. Additionally, in Inouye Caswell, the California appellate case that preceded federal review of these issues also considered. The same Caswell. Yes, Your Honor. Considered, quote, political whim, quote, political influence and quote, political clamor as potential considerations. And still found the 1999 rescission to be absolutely proper. Now, Petitioner just referred to McQuillian v. Duncan. It's a case neither party is cited to in the briefs. It's a 306 Fed Third 895. And what McQuillian v. Duncan reviewed was Inouye Caswell, the very facts before the court today. And the court used Caswell as the example of a proper rescission against which Mr. McQuillian's facts were considered when Mr. McQuillian was found parole suitable. And there they are quite notably different. There was not a substantive factual basis identified by the board for retaining Mr. McQuillian. On the other hand, as Inouye Caswell makes very clear, there was a specific deficiency in the 1986 parole board's determination. They simply looked at the attempted murder of victim Mr. McCabe, who was stripped, bound, thrown over a cliff and pelted with rocks until Mr. Caswell thought he was dead. And came to the conclusion that could be a mitigating factor reducing his term. Inouye Caswell said that simply was not sufficient under the facts, and McQuillian v. Duncan bore that out. Counsel, I'm interested in the leave to amend issue. You heard Mr. Multop's response on my question. What's your view on that issue? What makes it futile from your point of view? Initially, Your Honor, futility would be based upon the failure to exhaust. Now, as it has now been exhausted. Well, let's assume there's exhaustion. Forget about that. What would make it futile upon remand? Well, the district court, first of all, did not rule on futility. The magistrate judge issued his ruling upon that point. The district judge, however, ruled upon the issue that petitioner had not noticed the court or defendants for nearly three years of litigation of the intent to bring the new claims that were being exhausted. And that is found at page 18 of petitioner's excerpts of record. It's that undue delay, that inexcusable failure to announce to the court and to respondent that these were issues that were going to be subject of litigation for years that made this deficient. So the court was merely exercising its discretion. And the cases the court relied upon, cited at page 19, refer to periods of months or as much as two and a half years, whereas we have three years here where a petitioner had that deficiency. So the court was well within its discretion on that point, regardless of whether or not this might otherwise be moved. Well, but to deny on delay, I think, usually has to be some showing of prejudice. I don't know that there's any here. In terms of prejudice, Your Honor? Yes, by the state. And there can't be, because, you know, one of your arguments is failure to exhaust. And he's exhausted now. And so certainly, you know, it's – I don't see – what's your prejudice argument? Well, the prejudice, Your Honor, is the delay in the litigation. I know. What's your prejudice from the delay? From the delay? Yes. How are you prejudiced by the delay? That there's been three years of constant litigation on these issues that have not – in which defendants – excuse me, respondent has not had notice of this claim. So has no – had no way to gather the necessary evidence or prepare for something that's now grown quite cold. But you've gotten that through the exhaustion, right? He brought the claim before the state court earlier. So you knew about it at least at the time the state court claim was made. Except the new claim has been something that has been refiled before the state supreme court. So the delay is still there. This is as if there is a fresh petition brought anew years after the fact, years after the statute of limitations might normally have expired, that has now suddenly arisen before the district court after its long-since resolved discovery, motions practiced, and concluded this litigation. Mr. Williams, the petitioner is in custody, remains in custody, has no release date, may never get a release date. He's trying to at least get the chance to establish that the one and only one out of the five factors the 1999 parole board relied on to rescind parole was reached on the basis of a defective record constitutionally. That they misinterpreted and didn't pay rational and reasonable deference and correct reference to what the 76th board did. So how can your client be prejudiced if what the case would be about, if he's permitted leave to amend, will involve further review of the 1999 and the previous board's decisions? The information is going to remain available, won't it? Well, the information may be available in cold records, Your Honor, but as we know, that's why we have the statute of limitations. We protect the defendant or respondent's right to have contemporaneous access to this information, to query persons when their recollection is fresh, to determine what is accurate at the time of these decisions. Reviewing it years after the fact, when there have been no records, when the persons rendering these decisions may well have moved on or retired, makes it extraordinarily difficult. Had the statute of limitations been properly respected, had this issue been timely raised, that information could have been properly preserved at the time and been available. Thank you, counsel. Your time has expired. Thank you, Your Honor. Mr. Miltoff, we allowed Mr. Williams some extra time, so I'll allow you a minute. Very briefly, Your Honor. With respect to the request to amend regarding the 1999 claim, we're ostensibly being caught in a catch-22 here under Respondent's argument because under the delay argument barring the amendment, Caswell, once he got rescinded in 1999, was not only simultaneously supposed to start exhausting his state remedies, which he did in pursuit, he was also supposed to file some pleading in the federal court saying, if I lose my state proceedings at some indeterminate period down the road, I'm going to be coming to federal court to preserve his right to come to federal court after he concludes the state proceedings. Well, there's no law like that. You're supposed to commence your federal habeas proceedings within one year after the conclusion of state proceedings. Now, the idea of Respondent being prejudiced, Respondent represented the state of California throughout the state proceedings. When Caswell was, during the part that he won, during the part that he lost, and during the part that he went to the California Supreme Court. The state of California has been part of Caswell's rescission litigation throughout. There hasn't been any delay. If Caswell had filed his petition in federal court the day after the rescission decision came out, we would have had a lack of exhaustion argument. We would have been bounced out back to state court. So to conclude, we've been procedurally short-circuited on both claims, and we're requesting a remand to go back and get a merits determination on both of these constitutional claims. Thank you very much, counsel. Thank you. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Tashima, Matz